UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
ADIL KHALIL,                                               :
                                                           :
                              Plaintiffs,                  :
                                                           :
                  - against -                              :    **MEMORANDUM DECISION**
                                                           :    **AND ORDER**
                                                           :
CITY OF NEW YORK, NEW YORK POLICE                          :    17-cv-1729 (BMC) (ST)
DEPARTMENT OFFICER "JOHN DOE 1-4",                         :
DEPARTMENT OF CITYWIDE                                     :
ADMINISTRATIVE SERVICES OFFICER                            :
"JOHN DOE 1-4", PARAMEDIC EMT                              :
TECHNICIANS "JOHN DOE 1-6",                                :
                                                           :
                              Defendants.                  :
                                                           :
---------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff *pro se* brings this action under 42 U.S.C. §§ 1983 and 1985 for violations of his First, Fourth, and Fourteenth Amendment rights in connection with a series of unrelated allegedly false arrests and substantive due process violations. Judge Bianco dismissed plaintiff's first amended complaint but granted him leave to amend. Plaintiff filed a second amended complaint, and this matter has since been reassigned to this Court. Defendant, the City of New York, has moved to dismiss the second amended complaint. For the reasons below, defendant's motion is granted.

## BACKGROUND

Plaintiff is legally blind and suffers from ocular inflammation, glaucoma, sarcoidosis, and a schizotypal personality disorder. He is Pakistani and a Muslim.[1]

---

[1] Although plaintiff purports to raise a claim under the First Amendment for a deprivation of his freedom of religion, the only fact that plaintiff raises in support of this claim is that he is a Muslim. Because this is insufficient under the standards discussed below, the Court dismisses this claim as well.

A series of unrelated incidents with the New York Police Department ("NYPD") provides the basis for plaintiff's second amended complaint. Plaintiff alleges that he was in custody of the NYPD on several occasions, including February 7, 2014, December 26, 2015, May 3, 2018, May 25, 2018, and August 18, 2018. Generally, plaintiff states that while he was in custody, he was denied medication for his ocular inflammation and was injected with anti-psychotic medications without his consent. To the extent plaintiff provides any additional details (for the above-listed or other incidents), those details are described below.

On February 7, 2014, two NYPD officers responded to a report that a bookshelf had fallen in or near plaintiff's apartment and that screams of either "I need help" or "I need heroin" were heard. The officers found plaintiff intoxicated in the hallway after "unlawfully searching" plaintiff's apartment. They used "excessive physical force for the takedown" and restrained plaintiff without his consent. It appears that following this arrest, plaintiff was transferred to a hospital because plaintiff alleges that neither the EMT technicians nor the Queens General Hospital had the eyedrop medication that plaintiff must take for his ocular inflammation, which plaintiff claims resulted in the onset of secondary glaucoma.

On December 26, 2015, four NYPD officers, four "DCDA" officers, and two Emergency Medical Technicians ("EMT") "illegally entered and searched" plaintiff's apartment, and detained plaintiff without his consent. Plaintiff claims that this was done in retaliation for the fact that plaintiff filed an administrative complaint against several NYPD officers.

Plaintiff was involved in a car accident on February 7, 2018. The responding officers would only communicate with the other driver and would not take a report from plaintiff. The officers told plaintiff that he was emotionally disturbed and if he did not leave the scene of the

accident they would bring him to a psychiatric center for detention. They also threatened plaintiff with physical force.

On August 2, 2018, two NYPD officers refused to assist plaintiff after a food truck owner assaulted and threatened plaintiff and broke plaintiff's cell phone (which was worth $800). The officers told plaintiff that he was emotionally disturbed and deserved to have his phone broken because he was videotaping in public. The officers also threatened to commit plaintiff, because the NYPD "is 'scared' for their lives in the presence of the mentally ill."

Finally, on August 18, 2018, an arresting officer told plaintiff that he hears voices in his head and that the Department of Justice had authorized the officer to use excessive deadly force against plaintiff "because he is emotionally disturbed and the police force fear for their lives in his presence."

Plaintiff claims that defendant has "engaged in a consistent practice of 'wrongfully arresting and hospitalizing individuals who do not require in-patient mental health treatment, and falsifying documents to justify forced psychiatric hospitalizations.'" Plaintiff also alleges that defendant has denied him the freedom of religion because he has been profiled and discriminated against due to the fact that he has a mental disability, is Pakistani, and is a Muslim.

Plaintiff also alleges that defendant has conspired with a private university to portray plaintiff as violent, in violation of his substantive due process right to be free from involuntary commitment to a psychiatric institute or detention center.

Plaintiff claims a total amount $60,050,000.00 in damages.

## DISCUSSION

### I. Timeliness

Defendant argues that plaintiff's allegations about the February 7, 2014 incident are untimely and should be dismissed as a result.

3

"Section 1983 actions in New York are subject to a three-year statute of limitations, running from the time a plaintiff knows or has reason to know of the injury giving rise to the claim." Milan v. Wertheimer, 808 F.3d 961, 963 (2d Cir. 2015) (internal quotation marks and citations omitted). Plaintiff commenced this action by filing a complaint on March 22, 2017, in which he raised similar claims relating to this February 2014 incident, so plaintiff's second amended complaint – at issue here – relates back to the date of his original complaint. See Fed. R. Civ. P. 15(c)(1)(B). But because plaintiff knew or had reason to know of the injury on the date of the alleged entry and search of his apartment and his purported unlawful detention in the hallway, the three-year statute of limitations ran on February 7, 2017, which was over a month before plaintiff filed his original complaint.

Plaintiff argues that the statute of limitations should be equitably tolled under New York Civil Practice Law and Rules ("CPLR") § 208, which provides that if a person is under a disability because of insanity at the time a cause of action accrues, "the time within which the actin must be commenced shall be extended to three years after the disability ceases." "New York courts have defined 'insanity' narrowly, finding that it applies 'only to those individuals who are unable to protect their legal rights because of an over-all inability to function in society.'" Perez v. New York City Police Dep't, No. 16CIV6401, 2017 WL 635493, at *2 (E.D.N.Y. Feb. 15, 2017). The test also considers whether plaintiff has attempted to protect his legal rights. See id.

Plaintiff's self-reported history of mental illness does not meet the requisite showing for "insanity" to toll the statute of limitations under CPLR § 208. Plaintiff might experience "marked difficulties" in everyday activities such as maintaining his personal hygiene, health, and diet as he describes at length in the second amended complaint, but that does not mean he suffers

4

from a mental incapacity of the kind or severity as those envisioned by CPLR § 208. And the fact that plaintiff was able to file his complaint (which includes a detailed account of events that occurred over several years of his life and the legal principles that plaintiff asserts support his claims) within two months after the statute of limitations ran suggests that plaintiff was not suffering from a disability that truly interfered with his ability to protect his legal rights at the time his cause of action accrued.

Plaintiff's allegations concerning the February 7, 2014 incident are therefore dismissed as time barred.

**II.     Merits**

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Although the Court must construe *pro se* pleadings liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), and interpret them "to raise the strongest arguments that they suggest," Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal citation omitted), a *pro se* complaint must still include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The Court must accept as true all the well-pled allegations contained in the complaint. Iqbal, 556 U.S. at 678. But this tenet "is inapplicable to legal conclusions." Id. "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a

5

formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). A complaint does not state a claim for relief "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

In addition to this requirement of a well-pled complaint, plaintiff must also allege facts that amount of a violation of law. Plaintiff's second amended complaint includes a significant number of specific facts – such as dates, license plate numbers, identities, costs, etc. – but no matter how detailed those facts are, they must still allege that defendants committed a violation of his constitutional rights for his second amended complaint to state a claim for relief.

To maintain an action under § 1983, a plaintiff must allege that the conduct was "committed by a person acting under color of state law" and "deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). Here, plaintiff has named the City of New York and several unidentified John Does as defendants.

### A. *Municipal Liability*

To hold a municipal liable under §§ 1983 and 1985, "a plaintiff must show that 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). "The City cannot be held liable for the acts of its employees under a theory of *respondeat superior*." See Monell, 436 U.S. at 692.

As noted above, plaintiff argues that the City has engaged in a practice or policy of wrongfully arresting individuals and forcing them into psychiatric hospitalizations, and falsifying documents to justify those hospitalizations. Other than by claiming that this has happened to him (because the responding officers involved in each incident detailed in the complaint expressed

6

some type of reservation or fear of plaintiff as a result of his mental illness), plaintiff has failed to include in the second amended complaint any facts or non-conclusory allegations that suggests his claim has any merit.

In his opposition to defendant's motion to dismiss, plaintiff suggests that the NYPD's Patrol Guide 216-05 constitutes a policy that gives rise to municipal liability in this case. The Patrol Guide is titled "Mentally Ill or Emotionally Disturbed Persons," and its stated purpose is "[t]o safeguard a mentally ill or emotionally disturbed person who does not voluntarily seek medical assistance." But plaintiff does not explain why enforcing this policy subjects him to the deprivation of his rights, and the Court does not see how it could. Indeed, it appears that this Patrol Guide exists to protect plaintiff and to ensure his rights are not violated and his mental and physical health are not compromised when he interacts with NYPD officers.

Moreover, the statistics that plaintiff cites in his opposition (that in 2015, "twenty-five percent; 251 homicides involving 991 shootings by authorized NYPD handguns are reported to be against emotionally disturbed subjects") does not, contrary to plaintiff's assertion, suggest that defendant targets and discriminates against individuals with mental illness or who are emotionally disturbed, as identified in the Patrol Guide. Nor does plaintiff's allegation that defendant maintains a "blacklist database" of emotionally disturbed or mentally ill individuals. This is mere conclusory pleading. It does not consist of facts that suggest "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." See City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

Because plaintiff's second amended complaint is devoid of any allegations giving rise to municipal liability under Monell, plaintiff's §§ 1893 and 1985[2] claims against the City of New York must be dismissed.

### B. *Individual Liability*

Defendant's assertion that the City of New York is the only defendant against whom plaintiff can proceed, because the rest of the defendants are unidentified John Doe officers, is wrong. There is a well-established procedure pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997), whereby Corporation Counsel ascertains the names and addresses for John Doe officers and provides that information to plaintiff so that plaintiff can serve and proceed against the officers. The Court will not issue such an order, however, because none of the allegations in plaintiff's second amended complaint about the individual officers states a claim for relief under § 1983.

"A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Under New York law, "a plaintiff claiming false arrest must show . . . that the defendant intentionally confined him without his consent and without justification." Id.; see also Biswas v. City of New York, 973 F. Supp. 2d 504, 515 (S.D.N.Y. 2013) ("In order to state a claim for false arrest or false imprisonment, the plaintiff must show that (1) the defendant[s] intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.") (internal quotation marks and citations omitted).

---

[2] Merely alleging that the City of New York conspired with an unidentified private university to portray plaintiff as violent is insufficient to give rise to a claim for relief under § 1985. This is a conclusion, and even though plaintiff is proceeding *pro se*, he must still adhere to basic pleading standards.

8

With respect to the December 26, 2015 incident, plaintiff simply concludes that several NYPD officers, DCDA officers, and EMTs conducted an illegal search of his apartment and detained plaintiff without his consent. This constitutes a legal conclusion and is not enough to state a claim for relief.

With respect to the February 7, 2018 incident, plaintiff does not allege any facts to suggest that he was detained or arrested. And even if the officer did threaten plaintiff with physical force or psychiatric commitment, that does not give rise to a claim for false arrest under the applicable standard articulated above. Nor, for that matter, does it give rise to a claim for a violation of plaintiff's substantive due process rights under the Fourteenth Amendment. "In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005) (internal quotation marks and citations omitted). This standard is difficult to meet, and verbal threats alone are insufficient to given rise to a constitutional violation that is cognizable under § 1983. Cf. Harris v. Lord, 957 F. Supp. 471, 475 (S.D.N.Y. 1997). Plaintiff might take issue with the way the officer interacted with him, but that conduct is neither unlawful nor so egregious such that it amounts to a violation of plaintiff's constitutional rights.

With respect to the August 2, 2018 incident, plaintiff again does not allege any facts to suggest that he was detained or arrested. Assuming the officers did refuse to assist plaintiff when a food truck owner threatened plaintiff and broke his phone, that does not suggest the officers violated plaintiff's constitutional rights to be free from unlawful seizures of his person under the Fourth Amendment.

The outcome is the same for the August 18, 2018 incident. Even if the arresting officer made the statements alleged in the second amended complaint, those statements do not give rise to liability on the part of the officer (or even the inference of liability), under either the Fourth or the Fourteenth Amendments.

In addition, plaintiff includes no facts to describe what transpired during the incidents he references on May 3, 2018 and May 25, 2018, so those claims must be dismissed.

Finally, plaintiff generally alleges that when he was detained (not on any specific date), he was not provided with his eye inflammation medication and is instead pumped with anti-psychotic medications against his will. However, to state a claim for relief under § 1983, plaintiff must include specific facts alleging the personal involvement of each named defendant. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). Plaintiff does not connect this general assertion to any specific incident alleged in the second amended complaint, nor does he allege that any defendant (other than the municipality) had any involvement in depriving him of medication or injecting him with medication in violation of his constitutional rights. This claim must therefore be dismissed.

The implication of plaintiff's second amended complaint is that plaintiff is generally displeased with how NYPD officers interact with him, which seems to occur on a somewhat frequent basis. This unhappiness does not give rise to liability under § 1983, primarily because plaintiff has not alleged a violation of his constitutional rights.

### C. Leave to Amend

Plaintiff's request to file a third amended complaint is denied. As is evident from the three complaints that plaintiff has filed in this case, no amount of repleading has or will cure the deficiencies identified in this and previous orders of the Court.

Plaintiff was previously informed of the standard required to state a claim for relief sufficient to withstand a Rule 12(b)(6) motion, the standard for "insanity" under CPLR § 208, the standard to successfully plead a cause of action under § 1983, including the requirement of personal involvement of the defendants, the standard to allege a claim for a violation of his substantive due process rights relating to the threat of involuntary commitment, and the standard for pleading a conspiracy claim under § 1985. See Report & Recommendation, ECF No. 58.

Plaintiff, in filing his second amended complaint, was supposed to include allegations that remedied the deficiencies identified for him in his first amended complaint. Plaintiff failed to do that, so leave to amend again would be futile. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

## CONCLUSION

Accordingly, defendant's [74] motion to dismiss is GRANTED. The Clerk of Court is directed to enter judgment dismissing the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated: Brooklyn, New York                                                U.S.D.J.
       April 15, 2019